IN THE UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| **DELANCEY SMITH,**<br><br>     **Plaintiff,**<br><br>vs.<br><br>**SMS GROUP INC. f/k/a PRO-ECO LTD.,**<br>Serve:  Wilmington Trust SP Services, Inc.<br>          1100 N. Market St. 4th Floor<br>          Wilmington, DE 19890<br><br>     **Defendant.** | Case No. 3:22-cv-01303<br><br>**JURY TRIAL DEMANDED** |

## COMPLAINT

Plaintiff Delancey Smith ("Plaintiff") makes the following allegations for his Complaint against SMS Group Inc. f/k/a Pro-Eco Ltd.:

## INTRODUCTION

1.     This is a product liability case involving a Pro-Eco steel coil slitting line, described as GCS3 and identified as S.O. 6690 (the "coil slitter").

## PARTIES

2.     Plaintiff Delancey Smith is a resident of Illinois.

3.     Defendant SMS Group Inc. f/k/a Pro-Eco Ltd. ("Defendant") is a Delaware corporation with its principal place of business in Pittsburgh, Pennsylvania.

4.     Upon information and belief, Defendant is the lawful successor of Pro-Eco and assumed certain liabilities of Pro-Eco. In support, Plaintiff states as follows:

   a.   The coil slitter was originally manufactured, designed, and sold by Pro-Eco Ltd.

1

b. In or around 2000, SMS Demag Inc. entered into a contract for the purchase of, or otherwise merged with, Pro-Eco and therein expressly or impliedly contractually assumed the assets and liabilities of Pro-Eco.

c. Upon the purchase, acquisition, and/or merger between Pro-Eco and SMS Demag Inc., Pro-Eco's business, product lines, management, employees, assets, shares, shareholders, and physical properties passed to SMS Demag Inc.

d. After the purchase, acquisition, and/or merger, Pro-Eco dissolved as a registered business entity.

e. Upon the purchase, acquisition, and/or merger with Pro-Eco, SMS Demag Inc. continued to market and brand certain products and services under the name "SMS Demag Inc./Pro-Eco."

f. Upon the purchase, acquisition, and/or merger with Pro-Eco, SMS Demag Inc. continued to engineer, design, market, sell, install, and provide maintenance and parts for Pro-Eco products under the SMS Demag Inc./Pro-Eco name.

g. In or around 2009, SMS Demag Inc. merged with, or was otherwise renamed as, SMS Siemag Inc.

h. In 2014, SMS Siemag Inc. merged with, or was otherwise renamed as, SMS Group Inc. ("Defendant").

i. Defendant has assumed certain liabilities of Pro-Eco Ltd. for the manufacture, engineering, construction, design, marketing, selling, installing, and/or maintenance of Pro-Eco's products, including the coil slitter involved in this action.

j. Defendant continues the manufacturing, engineering, construction, design, marketing, selling, installing, and/or maintenance of Pro-Eco products and parts, including the coil slitter involved in this action.

k. Defendant continues to retain the Pro-Eco logo on its website.

l. Defendant is the sole surviving entity of the aforementioned companies.

m. Defendant is the successor to Pro-Eco Ltd.

## JURISDICTION

5. Jurisdiction is proper in this Court pursuant to 28 U.S.C. § 1332 because there is complete diversity and the amount in controversy exceeds $75,000.

6. This Court has personal jurisdiction over Defendant because Defendant served the market of Illinois with the coil slitter that ultimately harmed Plaintiff. Defendant, as lawful successor, assumed all liabilities for Pro-Eco products, including the coil slitter that was placed into the stream of commerce with the expectation that it would be purchased by consumers in Illinois. Further, Defendant maintains a location(s) in Illinois and holds itself out for business there.

## VENUE

7. Venue is proper in this Court pursuant to 28 U.S.C. § 1391(b)(2) because a substantial part of the events giving rise to the claim occurred in Granite City, Illinois.

## ALLEGATIONS COMMON TO ALL COUNTS

8. At approximately 2:20 p.m., on November 12, 2020, Plaintiff was operating and working with the coil slitter at a steel processing and factory plant located at 10 Northgate Industrial, Granite City, Illinois.

9. While Plaintiff was working with the coil slitter, the coil slitter's "pusher plate" failed to return to the proper position.

10. In an effort to correct the failure, Plaintiff's coworker engaged the coil slitter while Plaintiff was between the steel coil and the coil slitter's bearing arm.

11. Plaintiff's coworker unintentionally engaged the coil slitter's bearing arm, trapping and crushing Plaintiff between the bearing arm and the coil slitter.

12. Plaintiff's coworker immediately tried to retract the bearing arm on the coil slitter, but the arm failed to retract.

13. Upon further attempts by Plaintiff's coworker to retract the bearing arm from the control panel, the coil slitter's power failed.

14. Plaintiff remained trapped between the steel coil and the bearing arm of the coil slitter until a total machine reset was performed. As a result, Plaintiff suffered severe and extensive injuries.

15. The coil slitter was originally designed, manufactured, engineered, and marketed by Defendant's predecessor and was placed into the stream of commerce. Defendant, as successor, continued to engineer, maintain, refurbish, and supply spare parts for Pro-Eco products, including the coil slitter.

16. Immediately prior to the accident, the coil slitter was in substantially the same condition as when it was constructed and had not been materially altered, modified, or damaged prior to the incident.

17. At the time of the accident, the coil slitter was being used as intended and in a manner reasonably foreseeable to Defendant.

18. The coil slitter is intended to be used in a factory setting with one or multiple operators.

19. The coil slitter is intended to be used with operators working in or around the coil slitter and its various components

20. It is foreseeable that persons will come into close contact with the coil slitter and its components, including the retractable bearing arm.

21. At the time the coil slitter was sold new, it was defective in its design and manufacture, and it was unfit, unsafe, and unreasonably dangerous when used as intended.

22. The accident and danger posed by the defective and unreasonably dangerous condition of the coil slitter was known or should have been known to Defendant.

23. The coil slitter failed to function as expected.

24. Alternative feasible designs existed that would not impair the coil slitter's usefulness or desirability, including the use of sensing devices, sufficient warnings and properly located controls.

25. The alternative feasible designs would have prevented the harm and Plaintiff's injuries.

26. As a direct and proximate result of Defendant's conduct, acts, and omissions, Plaintiff suffered devastating and permanent injuries and other physical, mental, emotional injuries, and economic damages.

## COUNT I – STRICT PRODUCT LIABILITY

27. Plaintiff incorporates the above allegations as though fully set forth herein.

28. At all times material and relevant, Defendant, as successor to the original manufacturer of the coil slitter, was engaged in the business of designing, manufacturing,

marketing, maintaining, supplying, selling, and otherwise distributing and placing the stream of commerce steel-working products, including the coil slitter identified as GCS3 and S.O. 6690, at issue in this lawsuit.

29. The coil slitter reached Plaintiff, Plaintiff's coworkers and supervisors, and Plaintiff's employer, without any substantial change in its condition from the time it was supplied, distributed, and/or installed by Defendant's predecessor.

30. The coil slitter was in a defective condition and unreasonably dangerous to the ultimate user or consumer at the time it left the control of Defendant's predecessor.

31. At all times relevant herein, the coil slitter was in a defective condition and unreasonably dangerous when put to its reasonably foreseeable and anticipated use in that:

    a. The coil slitter was defectively designed;

    b. The coil slitter was defectively manufactured;

    c. The coil slitter's controls were unreasonably confusing;

    d. The coil slitter's on and off switches were placed unreasonably and dangerously close together;

    e. The coil slitter lacked adequate safety devices, guards and/or other mechanisms to prevent a user or operator from becoming crushed, pinned, or otherwise trapped between its components during use;

    f. The coil slitter lacked adequate safety devices, including but not limited to pressure sensitive mats and light curtains, to prevent injury and protect an operator or user of the coil slitter;

    g. The coil slitter was not adequately tested for its intended use;

    h. The coil slitter lacked adequate warnings of the above defects and hazards;

      i. The coil slitter lacked adequate warnings of the above defects and hazards in the appropriate locations;

      j. The coil slitter's manual lacked adequate warnings about the hazards associated with operating, using, or otherwise engaging the coil slitter;

      k. The coil slitter failed to protect Plaintiff from serious bodily injury; and

      l. Such further defects as the discovery and evidence will reveal.

32. Said dangerous conditions existed at the time the subject coil slitter was designed, manufactured, maintained, marketed, supplied, sold, leased, and/or distributed by Defendant and continued up to and including the time of the occurrence complained of.

33. On the date of Plaintiff's injury, the coil slitter was being used by Plaintiff, Plaintiff's co-workers and supervisors, and other operators for its intended purpose and in a manner reasonably anticipated by Defendant. The coil slitter was thus in a defective and unreasonably dangerous condition when put to its reasonably anticipated use.

34. The coil slitter was dangerous to an extent beyond that which would be ordinarily contemplated by the ordinary user or consumer who purchased, leased, and/or used it with the ordinary knowledge common to the community.

35. The defective and unreasonably dangerous condition of the coil slitter, as described above, was the direct and proximate cause of Plaintiff's severe, permanent, and disabling bodily injuries resulting in substantial medical bills. Plaintiff has suffered and will continue to suffer severe physical and emotional pain and mental anguish.

Wherefore, Plaintiff Delancey Smith prays for judgment against Defendant SMS Group Inc. for a fair and reasonable amount in excess of $75,000 for his costs incurred herein, and for such other costs and further relief as the Court deems just under the circumstances.

## COUNT II - NEGLIGENCE

36. Plaintiff incorporates the above allegations as though fully set forth herein.

37. Defendant had a duty to exercise reasonable care in designing, manufacturing, maintaining, marketing, supplying, selling, and otherwise distributing and placing the stream of commerce steel-working products, including the coil slitter, identified as GCS3 and S.O. 6690, at issue in this lawsuit.

38. Defendant failed to exercise reasonable care thereby breaching its duty to Plaintiff and others in one or more of the following ways:

   a. Defendant negligently and carelessly designed, manufactured, distributed, maintained, and/or sold a defectively designed and unreasonably dangerous coil slitter;

   b. Defendant negligently and carelessly failed to appropriately update, revise, or amend the coil slitter's manual to include appropriate warnings and instructions;

   c. Defendant negligently and carelessly failed to provide or install proper safety guards to protect users from parts, including the bearing arm, which move, collapse or shift during operation;

   d. Defendant negligently and carelessly failed to incorporate a design that provides sensors for automatic safety shutoffs and/or releases, including but not limited to pressure sensitive mats, light curtains, or other sensors;

   e. Defendant negligently and carelessly designed the coil slitter's control panel in that it is overly confusing and/or lacks proper instructions and labeling;

    f.   Defendant negligently and carelessly designed the coil slitter's control panel by placing the on and off switches dangerously close together and without clear and proper distinctions;

    g.   Defendant negligently and carelessly failed to provide adequate warnings of the dangerous propensities of the coil slitter;

    h.   Defendant negligently and carelessly failed to provide warnings in appropriate locations;

    i.   Defendant negligently and carelessly failed to provide adequate warning about the hazards associated with the coil slitter's bearing arm and/or other moving components and pinch points in the coil slitter's manual;

    j.   Defendant negligently and carelessly provided and/or maintained the coil slitter which failed to protect Plaintiff from serious bodily injury; and

    k.   Such further negligence as discovery and evidence will reveal.

39.    Defendant knew, or in the exercise of ordinary care, reasonably should have known that severe bodily injury was substantially likely to occur as a result of its negligence as described above.

40.    At all relevant times, Plaintiff did not know, and by using ordinary care, could not have known of the dangerous and defective condition of the coil slitter.

41.    As a direct and proximate result of the negligent acts and/or omissions described above, Plaintiff suffered severe, permanent, and disabling bodily injuries resulting in substantial medical bills. Plaintiff has suffered and will continue to suffer severe physical and emotional pain and mental anguish.

Wherefore, Plaintiff Delancey Smith prays for judgment against Defendant SMS Group Inc. for a fair and reasonable amount in excess of $75,000 for his costs incurred herein, and for such other costs and further relief as the Court deems just under the circumstances.

                         Respectfully Submitted,

                         **THE SIMON LAW FIRM, P.C.**

By:    */s/ Patrick R. McPhail*
        John G. Simon, #6196127
        Kevin M. Carnie, Jr. #6303115
        Patrick R. McPhail, #6328571
        800 Market Street, Suite 1700
        St. Louis, Missouri 63101
        jsimon@simonlawpc.com
        kcarnie@simonlawpc.com
        pmcphail@simonlawpc.com
        (314) 241-2929
        (314) 241-2029 / Facsimile
        ***Attorneys for Plaintiff***