## IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF ILLINOIS

| | | |
|---|---|---|
| **DELANCEY SMITH,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| **vs.** | ) | **Case No. 22-cv-1303-DWD** |
| | ) | |
| **SMS GROUP, INC.** | ) | |
| **SMS CONCAST CANADA, INC.,** | ) | |
| | ) | |
| **Defendants.** | ) | |
| | ) | |
| **SMS GROUP, INC** | ) | |
| | ) | |
| **Third-Party Plaintiff,** | ) | |
| | ) | |
| **vs.** | ) | |
| | ) | |
| **HEIDTMAN STEEL PRODUCTS,** | ) | |
| **INC.,** | ) | |
| | ) | |
| **Third-Party Defendant.** | ) | |

## <u>MEMORANDUM AND ORDER</u>

**DUGAN, District Judge:**

Now before the Court is Defendant SMS Group, Inc.'s Motion for Summary Judgment (Doc. 87). Plaintiff Delancey Smith opposes the Motion (Doc. 93). On September 14, 2023, the Court held a hearing and heard arguments from the parties (Doc. 97). For the reasons stated on the record, and as detailed below, Defendant's Motion for Summary Judgment will be denied, albeit without prejudice.

## <u>Discussion</u>

Summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."

1

Fed. R. Civ. P. 56(a).  In resolving a motion for summary judgment, the Court construes the pleadings and other evidentiary material in the record in the light most favorable to the non-moving party.  *Goelzer v. Sheboygan Cnty., Wis.*, 604 F.3d 987, 992 (7th Cir. 2010).  However, the non-moving party must present definite, competent evidence in the face of the motion's charges to successfully overcome the motion.  *Vukadinovich v. Bd. of Sch. Trustees of N. Newton Sch. Corp.*, 278 F.3d 693, 699 (7th Cir. 2002).

As alleged in Plaintiff's Second Amended Complaint, on November 12, 2020, Plaintiff was operating and working with a coil slitter at a steel processing and factory plant in Granite City, Illinois (Doc. 77, ¶ 9).  Plaintiff describes the coil slitter as "a Pro-Eco steel coil slitting line, described as GCS3 and identified as S.O. 6690" (Doc. 77, ¶ 1).  While operating the coil slitter, its "pusher plate" failed to return to the proper position and Plaintiff became trapped between the coil slitter's bearing arm and the coil slitter (Doc. 77, ¶¶ 10-15).  The bearing arm failed to retract, and the coil slitter's power failed, keeping Plaintiff trapped until a total machine reset was performed and causing severe and extensive injuries to Plaintiff (Doc. 77, ¶¶ 10-15).  Plaintiff alleges multiple defects in the coil slitter's design, manufacturing, and marketing and brings strict liability and negligence counts against Defendants SMS Group, Inc. and SMS Concast Canada, Inc. (Doc. 77).

Plaintiff maintains that the coil slitter involved in his accident was manufactured, designed, and sold by the entity Pro-Eco Ltd. ("Pro-Eco") (Doc. 77, ¶ 5(a)). Plaintiff alleges that Pro-Eco dissolved as a business entity sometime after 2000 when it entered into a purchase or merger agreement with the entity SMS Demag, Inc. (Doc. 77, ¶ 5(a)-(g)).

Plaintiff alleges SMS Demag, Inc. merged with, or was otherwise renamed as SMS Siemag, Inc. in or about 2009 (Doc. 77, ¶ 59(g)). Alternatively, Plaintiff alleges that Pro-Eco LTD ceased its business in 2013 and sold its remaining assets to SMS Concast Canada and was merged into SMS Concast Canada (Doc. 77, ¶ 5(h)). Plaintiff maintains that the SMS Defendants (SMS Group, Inc. and/or SMS Concast Canada) assumed certain liabilities of Pro-Eco, Ltd. and are the sole surviving entities and successors to Pro-Eco and its products (Doc. 77, ¶ 5(i)-(m)). Plaintiff alleges that the SMS Defendants continue to manufacture, engineer, construct, design, market, sell, install, and maintain Pro-Eco products and parts, including the coil slitter involved in this case (Doc. 77, ¶ 5(i)-(m)). This includes retaining the Pro-Eco logo on their websites (Doc. 77, ¶ 5(k)).

Defendant SMS Group, Inc. adamantly disagrees that it is a successor of Pro-Eco or in any way related to coil slitter at issue in this case (Doc. 83). Thus, in support of its Motion for Summary Judgment, Defendant submitted documents obtained from Third-Party Defendant Heidtman Steel Products, Inc. ("Heidtman") and Pro-Eco. detailing Heidtman's purchase of the coil slitter at issue in this case in or about October 2002 (Doc. 87-4; Doc. 87-5; Doc. 87-7). Defendant further provided an affidavit from its CFO, Peter Fernie (Doc. 83-3), in which Fernie represents that Defendant:

> "[N]ever designed or manufactured a slitter line or its component parts and equipment for Heidtman";
>
> Does not "design, manufacture, market, sell, maintain, service or supply parts for the slitter line or its component parts and equipment identified in the Amended Complaint";
>
> "[H]as not assumed the assets or liabilities of any entity which design, manufactured, marketed, sold, maintained, serviced or supplied parts for

the slitter line and its component part and equipment alleged in Plaintiff's Amended Complaint"; and

"[I]s not a successor corporation to any entity which designed, manufactured, marketed, sold, maintained, serviced or supplied parts for the slitter line and its component part and equipment alleged in Plaintiff's amended complaint.

(Doc. 87-3).

Despite these representations, Plaintiff maintains that there is a material dispute of fact concerning whether Defendant can be held liable as a successor entity of Pro-Eco (Doc. 93). To that end, Plaintiff supplies an unmarked screenshot of a website page with the address "sms-group.us/products/proeco-equipment" (Doc. 65-1). Included on this website page is the following text: "As Pro-Eco was purchased by SMS group several years ago, our technicians have full access to all drawings, and we work closely with our SMS groug [*sic*] spare parts group to provide genuine spare parts." (Doc. 65-1). Plaintiff argues that by referring to a purchase of Pro-Eco assets, and representing its access to Pro-Eco's drawings, spare parts, and equipment, this text creates a reasonable inference that Defendant was a party to a purchase agreement with the former Pro-Eco, Ltd.

Defendant denies that this website's text can be attributed to it, but instead maintains that the text should be construed as referring to the "SMS Group" family as a whole, of which Defendant is only one of many SMS Group entities. Defendant further argues that even if this text could be attributed to it, at best, it infers that a purchase occurred between an SMS Group entity and Pro-Eco, but in no way suggests that Defendant or another SMS Group entity assumed any of Pro-Eco's liabilities, which is a necessary condition for finding liability against it. Plaintiff disagrees, arguing that the

4

question of whether Defendant or another SMS Group entity assumed Pro-Eco's liabilities is still unresolved, thus creating a material dispute of fact to preclude summary judgment.

Plaintiff further acknowledges that although assets and liabilities are often sold separately there is no indication of such separation here. Plaintiff thus complains that it has been unable to obtain a copy of the Pro-Eco asset purchase agreement to confirm or deny whether Defendant, or another SMS Group entity, may be responsible for the assumption of Pro-Eco's liabilities in addition to Pro-Eco's assets. Here, the Court reiterates that questions concerning the asset purchase agreement and Defendant's purported relationship with Pro-Eco likely can be, and should have been, easily solved through reasonable discovery efforts. But it is not clear from the record that Plaintiff has yet attempted any substantial discovery in this matter.

Despite Plaintiff's discovery deficiencies, and Defendant's sworn statements, the Court cannot ignore a glaring issue in Defendant's pleadings here. Specifically, in Defendant's Answer to Plaintiff's Second Amended Complaint (Doc. 83), Defendant admitted the following: "**Defendant SMS Group Inc. f/k/a Pro-Eco Ltd.** is a Delaware corporation with its principal place of business in Pittsburgh, Pennsylvania." (Doc. 83, p. 2, ¶ 3) (emphasis supplied). This admission conflicts with Defendant's other representations that it has no affiliation with Pro-Eco, Ltd. Accordingly, by admitting that Defendant was "formally known as Pro-Eco Ltd." the Court finds a material dispute of fact concerning Defendant's relationship with Pro-Eco, Ltd. as a successor entity, precluding summary judgment at this time.

5

## <u>Conclusion</u>

For these reasons, Defendant's Motion for Summary Judgment (Doc. 87) is **DENIED**.  However, in so denying, the Court emphasis that this denial is without prejudice to Defendant refiling the motion.  The parties are **GRANTED** until **October 28, 2023** to conduct further discovery on the issue of Defendant's alleged successor relationship with Pro-Eco, Ltd. Finally, having resolved Defendant's Motion for Summary Judgment, the Court also **DENIES** Defendant's Motion to Strike Plaintiff's Exhibit in Response to Defendant's Motion for Summary Judgment (Doc. 95), **as moot, and without prejudice**.

**SO ORDERED.**

Dated: September 15, 2023

/s/ David W. Dugan
DAVID W. DUGAN
United States District Judge